

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

BEVERLY YOUNG, BLAKE BOATMAN )
BRADLEY BOATMAN, BRENT )
BOATMAN, and WILLIAM BOATMAN, )
)
Appellants, )
)
v. )
)
BRIAN BOATMAN, individually and as )
Attorney-in Fact for Bojilina H. Boatman; )
and THE ESTATE OF BOJIILINA H. )
BOATMAN, )
)
Respondents. )
_____ )

No. 72643-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 8, 2016

SCHINDLER, J. — The beneficiaries of the Estate of Bojilina H. Boatman (Estate)

appeal summary judgment dismissal of their Trust and Estate Dispute Resolution Act

(TEDRA), chapter 11.96A RCW, petition. Because only the personal representative can

bring a claim on behalf of the Estate for the actions of the attorney-in-fact for Bojilina,

we affirm the determination that the beneficiaries do not have standing to bring a

TEDRA action against the attorney-in-fact on behalf of the Estate for breach of fiduciary

duty and conversion. However, because the undisputed facts establish a conflict of

interest, we reverse dismissal of the TEDRA petition to remove the personal

representative. On remand, the court shall appoint an interim personal representative

to determine whether to pursue a claim on behalf of the Estate against the attorney-in-

fact for breach of fiduciary duty and conversion. Accordingly, we reverse in part, affirm in part, and remand.

## FACTS

On October 3, 2005, Bojilina H. Boatman executed a will and a durable power of attorney. The power of attorney designates her son Brian Boatman as the attorney-in-fact. The power of attorney gives Brian[1] "the power to do all things with respect to the assets and liabilities . . . as the principal could do if present and competent, including but not limited to the following:

> a. To make, amend, alter or revoke any of the principal's wills or codicils; and
> b. To make, amend, alter or revoke any of the principal's life insurance beneficiary designations; and
> c. To make, amend, alter or revoke any of the principal's employee benefit plan beneficiary designations; and
> d. To make, amend, alter or revoke any of the principal's trust agreements; and
> e. To make, amend, alter or revoke any of the principal's community property agreements; and
> f. To make gifts of any property owned by the principal; and
> g. To make transfers of any of the principal's property to any trust, whether or not the principal is a beneficiary thereof.
> h. To sell, transfer, convey, encumber, mortgage, lease, and purchase, any property, real or personal.
> Further, the attorney-in-fact shall have the full power to provide for the support, maintenance and health of the incompetent principal, including provide informed consent for health care decisions on the principal's behalf.

The power of attorney states that it shall take effect upon receipt of a written statement by a doctor that Bojilina cannot "manage her property and affairs for reasons such as mental illness, mental deficiency, physical illness or disability, advanced age, or disappearance."

---

[1] We use first names for purposes of clarity.

In her will, Bojilina leaves the majority of the Estate in equal shares to each of her six adult children: Bradley Boatman, Beverly Young, Brian Boatman, Brent Boatman, Blake Boatman, and William Boatman. Bojilina designates her son Brian as the personal representative of the Estate.

Bojilina started living with Brian in early 2007. Brian assumed primary responsibility for her care. On July 12, 2007, Dr. Carletta Vanderbilt diagnosed Bojilina with dementia and Alzheimer's disease. Dr. Vanderbilt signed a written statement that Bojilina is "incompetent to make decisions affecting health or financial issues." Under the terms of the durable power of attorney, Brian assumed responsibility as the attorney-in-fact for his mother. Brian acted as the attorney-in-fact for Bojilina from July 12, 2007 until she died on May 18, 2013.

On June 7, 2013, the court admitted the will into probate and appointed Brian as the personal representative of the Estate with nonintervention powers and without bond.

On September 5, 2013, Brian filed an inventory of the Estate. The inventory identifies $44,636.23 in probate assets and $298,497.65 in nonprobate assets.

On December 20, 2013, Bradley Boatman, Beverly Young, Brent Boatman, Blake Boatman, and William Boatman (collectively the beneficiaries) filed a TEDRA petition against Brian "individually and as the Attorney-in Fact for Bojilina H. Boatman" and against "the Estate of Bojilina H. Boatman." The beneficiaries also served a request for production of financial documents.

The petition alleged Brian owed a fiduciary duty as attorney-in-fact to Bojilina "while she was alive." The petition alleged that "[w]hile Brian served as Decedent's attorney-in-fact, Decedent's resources dramatically dissipated, resulting in a loss of:

3

approximately $555,000-$575,000 in ultimate probate assets." The beneficiaries alleged that "without permission, justification, or authorization, Brian transferred substantial assets of Decedent to himself," and as a result, "Brian is liable to the Estate for all of Decedent's assets converted by him."

The beneficiaries alleged that as the personal representative of the Estate, "Brian owes a fiduciary duty to the Estate," and requested the court remove Brian as the personal representative, revoke "the Letters Testamentary," and appoint the "alternative representative as specified in the Will." The petition alleged, in pertinent part:

> Petitioners are asserting claims personally against Brian for conversion, breach of fiduciary duties and for an accounting relating to and arising out of Brian's conduct as attorney-in-fact for Decedent, as well as seeking revocation of letter testamentary issued to Brian with respect to the Estate in the Probate.

The Estate and Brian filed an answer to the TEDRA petition. The answer asserts Brian "managed his mother's assets under a valid power of attorney which specifically allowed paying for her support, maintenance, and health as well as gifting." The answer also asserts Brian "did not improperly divert any of Bojilina's assets;" "all payments . . . made from Bojilina's assets were authorized and reasonable;" and "Brian did not make himself a loan, so it was proper that no loan appeared on the inventory of the estate."

The answer asserts the Estate "only includes assets that existed as of the date of [Bojilina's] death, not for the seven years prior to her death." Brian asserts the duties he owed to Bojilina "as attorney-in-fact are different from the duties he owes the estate and his siblings as beneficiaries and do not directly continue and transfer from one to the other."

Brian denied he had a duty to provide an accounting or produce documents but states he had produced approximately 4,200 pages of financial records including bank statements, check registers, and receipts. The answer states, in pertinent part:

> During Bojilina's life, Petitioners did not make a demand for an accounting or file a petition under RCW 11.94.090 alleging that court intervention was necessary. Petitioners did inquire about the general status of Bojilina's money on occasion when they requested that Brian give them gifts from her accounts. Although Brian denies any duty to do so, he has provided Petitioners with copies of check registers, bank statements and other important financial and care information regarding Bojilina.

Brian and the Estate asserted a number of affirmative defenses including failure to state a claim upon which relief can be granted, the beneficiaries "have suffered no damages in that they have or will have received all assets to which they have a right as beneficiaries of the Estate of Bojilina Boatman," and the beneficiaries "lack standing to assert the claims set forth in its Petition." The Estate and Brian asserted a counterclaim for attorney fees and costs.

After retaining separate counsel, Brian filed an amended answer "in his individual capacity." The answer incorporates by reference the previously filed answer.

Brian filed a CR 12(b)(6) motion to dismiss the TEDRA petition for failure to state a claim upon which relief can be granted. Brian argued that as the attorney-in-fact, he only owed a duty to Bojilina. Brian argued the beneficiaries did not have standing to bring claims on behalf of the Estate for breach of fiduciary duty or conversion against him as the attorney-in-fact and any alleged conversion of funds while acting as the attorney-in-fact was barred by the statute of limitations.

> Petitioners are not the person or party whom any fiduciary duty was owed prior to Bojilina Boatman's death, and thus the establishment of her estate. Further, they are not representatives of the Estate. They are not the party in interest, they are not a representative of the party in interest,

and have no standing to bring claims for breach of fiduciary duty or conversion prior to death.

The beneficiaries filed a response and declarations in opposition to the CR 12(b)(6) motion. The beneficiaries argued the financial records Brian produced showed he misappropriated $428,864.27. The beneficiaries also argued the court should remove Brian as the personal representative of the Estate because he breached his fiduciary duty to the Estate by failing to pursue a claim for conversion.

At the beginning of the hearing on the CR 12(b)(6) motion to dismiss, the parties agreed the court should treat the motion as a motion for summary judgment.[2] The court stated the threshold question was standing. The court requested supplemental briefing on whether the beneficiaries had standing to pursue the claims against Brian as attorney-in-fact for breach of fiduciary duty and conversion on behalf of the Estate.

> Just on that issue alone, I think we need to get through that and see. . . . Because if you're, if you get through the standing issue, then, yeah, you've got issues of fact everywhere, no question about that. I think [Brian's attorney] would agree with that.

In supplemental briefing, the beneficiaries argued they had standing to assert claims on behalf of the Estate against Brian while acting as the attorney-in-fact from 2007 until Bojilina died in 2013. The beneficiaries also requested removal of Brian as the personal representative of the Estate for breach of fiduciary duty. Specifically, "for failing to take actions necessary to recover Estate assets appropriated" by Brian while acting as the attorney-in-fact.

Brian argued that as a matter of law, any claim against him as the attorney-in-fact belonged to Bojilina, and that after her death, only the personal representative had the

---

[2] Because the court considered material outside the pleadings, a CR 12(b)(6) motion to dismiss is treated as motion for summary judgment under CR 56. Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

statutory right to bring an action on behalf of the Estate against Brain as the attorney-in-fact.

The court dismissed the TEDRA petition. The court ruled the beneficiaries did not have standing to bring a TEDRA action on behalf of the Estate against Brian as the attorney-in-fact. The court ruled, "Petitioners have no standing to bring any action for damages on behalf of the Estate. Any such cause of action belongs, as a matter of law, to the Court appointed Personal Representative."

The court denied the request to remove Brian as the personal representative. The court ruled, "Petitioners have not provided sufficient evidence to persuade this Court that Brian Boatman should be removed as the Personal Representative in this matter." The court dismissed the TEDRA petition for "Conversion, Breach of Fiduciary Duties, for an Accounting and Damages, and to Revoke Letters Testamentary."

The beneficiaries appeal. The Washington Academy of Elder Law Attorneys filed an amicus brief arguing the beneficiaries have standing under TEDRA. Brian filed a response brief. The Estate adopts the facts and arguments set forth in Brian's brief. The Estate filed a brief in response to the amicus. [3]

ANALYSIS

The beneficiaries challenge summary judgment dismissal of the TEDRA petition. The beneficiaries assert the court erred (1) in ruling they did not have standing to bring claims on behalf of the Estate to recover assets from Brian as the attorney-in-fact and

---

[3] In the reply brief, the beneficiaries move to strike the portions of the response brief that address the merits of the claims for breach of fiduciary duty and conversion. The beneficiaries argue the court did not reach the merits of the claims. Because the record establishes the court addressed only the threshold issue of standing, we do not consider the arguments on the merits. RAP 2.4(a).

(2) in denying their TEDRA petition to remove Brian as the personal representative of the Estate.

We review summary judgment dismissal de novo. Korslund v. DynCorp Tri-Cities Servs., Inc., 156 Wn.2d 168, 177, 125 P.3d 119 (2005). Under CR 56(c), summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Standing is a threshold issue that we also review de novo. In re Estate of Becker, 177 Wn.2d 242, 246, 298 P.3d 720 (2013). Where a party lacks standing, we refrain from reaching the merits of that claim. Org. to Preserve Agr. Lands v. Adams County, 128 Wn.2d 869, 896, 913 P.2d 793 (1996).

Whether the beneficiaries have standing under TEDRA to bring claims on behalf of the Estate against the attorney-in-fact is a question of statutory interpretation. We review questions of statutory interpretation de novo. In re Estate of Haviland, 177 Wn.2d 68, 75, 301 P.3d 31 (2013); In re Estate of Stover, 178 Wn. App. 550, 556, 315 P.3d 579 (2013).

When interpreting a statutory provision, our primary objective is to ascertain the intent of the legislature. Haviland, 177 Wn.2d at 75-76; Stover, 178 Wn. App. at 556. Where a statute is unambiguous, we give effect to the plain language of the statute as an expression of legislative intent. Haviland, 177 Wn.2d at 75-76; In re Estate of Jones, 152 Wn.2d 1, 11, 93 P.3d 147 (2004). We discern the plain meaning of a statutory provision based on the meaning of the language, the context of the statute, related provisions, and the statutory scheme as a whole. Stover, 178 Wn. App. at 556. An interpretation that reads language in isolation is too limited and fails to apply this rule.

8

Jongeward v. BNSF Ry., 174 Wn.2d 586, 595, 278 P.3d 157 (2012). We must "harmonize statutes pertaining to the subject matter and maintain the integrity of the statues within the overall statutory scheme." Philippides v. Bernard, 151 Wn.2d 376, 385, 88 P.3d 939 (2004); see also In re Estate of Evans, 181 Wn. App. 436, 442-48, 326 P.3d 755 (2014) (we must harmonize TEDRA with related statutes).

The beneficiaries rely on RCW 11.96A.080 to argue they have standing to bring claims on behalf of the Estate against Brian as the attorney-in-fact for breach of fiduciary duty and conversion.[4]

RCW 11.96A.080(1) states, in pertinent part, "[A]ny party may have a judicial proceeding for the declaration of rights or legal relations with respect to any matter, as defined by RCW 11.96A.030."

RCW 11.96A.030 states, "The definitions in this section apply throughout this chapter unless the context clearly requires otherwise." The definition of a "party" includes a beneficiary. RCW 11.96A.030(5) defines a "party" as "each of the following persons who has an interest in the subject of the particular proceeding . . . : (e) A beneficiary."

Although the definition of "matter" does not include the right of the beneficiaries to bring an action on behalf of the Estate, RCW 11.96A.030(2) broadly defines "matter." Former RCW 11.96A.030(2) states, in pertinent part:

> "Matter" includes any issue, question, or dispute involving:
> (a) The determination of any class of creditors, devisees, legatees, heirs, next of kin, or other persons interested in an estate, . . . nonprobate

---

[4] In addition to arguing the beneficiaries have standing under TEDRA, the Washington Academy of Elder Law Attorneys argue the beneficiaries have standing under the slayer statute, chapter 11.84 RCW. The definition of "matter" under TEDRA includes claims under the slayer statute. RCW 11.96A.030(2)(e). However, because this argument is raised for the first time on appeal, we granted the motion to strike this argument.

asset, or with respect to any other asset or property interest passing at death;

      (b)  The direction of a personal representative or trustee to do or to abstain from doing any act in a fiduciary capacity; [and]

      (c)  The determination of any question arising in the administration of an estate . . . , or with respect to any nonprobate asset, or with respect to any other asset or property interest passing at death, that may include, without limitation, questions relating to: . . . (ii) a change of personal representative or trustee; (iii) a change of the situs of a trust; (iv) an accounting from a personal representative or trustee; or (v) the determination of fees for a personal representative or trustee.[5]

The purpose of TEDRA is "to set forth generally applicable statutory provisions for the resolution of disputes and other matters involving trusts and estates in a single chapter under Title 11 RCW." RCW 11.96A.010. TEDRA makes clear that it does not supersede other provisions in Title 11 RCW. RCW 11.96A.080(2) expressly states that the provisions of TEDRA "shall not supersede, but shall supplement, any otherwise applicable provisions and procedures contained in this title, including without limitation those contained in chapter 11.20, 11.24, 11.28, 11.40, 11.42, or 11.56 RCW." See also In re Estate of Kordon, 157 Wn.2d 206, 212, 137 P.3d 16 (2006) (TEDRA does not supersede but instead shall supplement the other provisions of Title 11 RCW).

Under RCW 11.48.010, only the personal representative has the authority to "maintain and prosecute" actions on behalf of the estate. RCW 11.48.010 states, in pertinent part:

The personal representative shall be authorized in his or her own name to maintain and prosecute such actions as pertain to the management and settlement of the estate, and may institute suit to collect any debts due the estate or to recover any property, real or personal, or for trespass of any kind or character.

---

[5] The legislature amended RCW 11.96A.030(2)(c) in 2015 to add subsection (vi) to include the determination of any question relating to "the powers and duties of a statutory trust advisor or directed trustee of a directed trust under chapter 11.98A RCW." LAWS OF 2015, ch. 115, § 1.

RCW 11.48.060 also expressly gives the personal representative the right to bring an action against an attorney-in-fact for conversion. RCW 11.48.060 states:

> If any person, before the granting of letters testamentary or of administration, shall embezzle or alienate any of the moneys, goods, chattels, or effects of any deceased person, he or she shall stand chargeable, and be liable to the personal representative of the estate, in the value of the property so embezzled or alienated, together with any damage occasioned thereby, to be recovered for the benefit of the estate.[6]

The cases the beneficiaries cite, Drain v. Wilson, 117 Wash. 34, 200 P. 581 (1921), and In re the Estate of Wheeler, 71 Wn.2d 789, 431 P.2d 608 (1967), are inapposite. Neither Drain nor Wheeler address whether beneficiaries have standing to bring an action on behalf of an estate against an attorney-in-fact. In Drain and Wheeler, the court held that when an action augments a fund for the benefit of the beneficiaries under a will, attorney fees are warranted. Drain, 117 Wash. at 37-39; Wheeler, 71 Wn.2d at 796-98; see also Seattle Sch. Dist. No. 1 v. State, 90 Wn.2d 476, 541-42, 585 P.2d 71 (1978).

The out-of-state cases relied on by the beneficiaries, Siegel v. Novak, 920 So.2d 89 (Fla. Dist. Ct. App. 2006), and Priestly v. Priestly, 949 S.W.2d 594 (Ky. 1997), interpret different statutory language and are inapposite. In Siegel, the Florida District Court of Appeals allowed beneficiaries of a revocable trust to pursue a claim against the trustee for improper distributions from the trust that occurred during the settlor's lifetime. Siegel, 920 So.2d at 96. In Priestly, the Kentucky Supreme Court interpreted a Kentucky statute to allow claims against the administrator of an estate for actions the administrator took before the decedent's death. Priestly, 949 S.W.2d at 597-98.

---

[6] RCW 4.20.046(1) also provides that "[a]ll causes of action by a person . . . shall survive to the personal representative."

11

We hold that under the plain and unambiguous language of Title 11 RCW, only the personal representative has the authority to bring claims for breach of fiduciary duty and conversion on behalf of the Estate against Brian while acting as the attorney-in-fact. Accordingly, we affirm the determination that the beneficiaries do not have standing to bring claims against Brian for breach of fiduciary duty and conversion while acting as the attorney-in-fact.[7]

Next, the beneficiaries contend the court erred in denying their TEDRA petition to remove Brian as the personal representative of the Estate. The beneficiaries argue the conflict of interest between maximizing the Estate while trying to avoid personal liability "mandates Brian's removal as personal representative." Because the undisputed record establishes a conflict of interest, we hold the court erred in dismissing the request to remove Brian as the personal representative for purposes of investigating and determining whether to bring claims against Brian as the attorney-in-fact for breach of fiduciary duty and conversion.

The personal representative owes the beneficiary of an estate a fiduciary duty to act in the best interest of the estate. In re Estate of Larson, 103 Wn.2d 517, 520-21, 694 P.2d 1051 (1985). "[A]n estate beneficiary can protect his or her interest in the estate by having the personal representative removed if the personal representative breaches a fiduciary duty to the estate" under RCW 11.68.070 and 11.28.250. Trask v. Butler, 123 Wn.2d 835, 843-44, 872 P.2d 1080 (1994). RCW 11.68.070 provides, in

---

[7] Accordingly, the court did not err in ruling the beneficiaries did not have standing to demand discovery or an accounting. Nonetheless, as noted, Brian produced approximately 4,200 pages of financial records and an accounting.

pertinent part:

> If any personal representative who has been granted nonintervention powers fails to execute his or her trust faithfully or is subject to removal for any reason specified in RCW 11.28.250 as now or hereafter amended, upon petition of . . . any heir, devisee, [or] legatee, . . . such petition being supported by affidavit which makes a prima facie showing of cause for removal or restriction of powers, . . . and if . . . it appears that said personal representative has not faithfully discharged said trust or is subject to removal for any reason specified in RCW 11.28.250 as now or hereafter amended, then, in the discretion of the court the powers of the personal representative may be restricted or the personal representative may be removed and a successor appointed.

RCW 11.28.250 provides:

> Whenever the court has reason to believe that any personal representative has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his or her charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such personal representative, or for any other cause or reason which to the court appears necessary, it shall have power and authority, after notice and hearing to revoke such letters. The manner of the notice and of the service of the same and of the time of hearing shall be wholly in the discretion of the court, and if the court for any such reasons revokes such letters the powers of such personal representative shall at once cease, and it shall be the duty of the court to immediately appoint some other personal representative, as in this title provided.

Consistent with the provisions in RCW 11.68.070 and 11.28.250, the plain and unambiguous language of the TEDRA statute gives a beneficiary standing to file a petition to remove the personal representative. Specifically, a "beneficiary" has standing to "have a judicial proceeding" to determine "any question arising in the administration of an estate," including questions relating to "a change of personal representative." RCW 11.96A.030(5)(e), .080(1), .030(2)(c)(ii).

Because the undisputed record establishes a conflict of interest, the court erred in dismissing the TEDRA petition to remove Brian as the personal representative for

purposes of investigating and determining whether to bring an action for breach of fiduciary duty and conversion on behalf of the Estate. On remand, the court shall appoint an interim personal representative to determine whether to pursue an action on behalf of the Estate against Brian as the attorney-in-fact for Bojilina from 2007 until her death in 2013. See Jones, 152 Wn.2d at 19.

We affirm in part, reverse in part, and remand.[8]

WE CONCUR:

_____

_____

_____

---

[8] Both parties request attorney fees under RCW 11.96A.150(1) and RAP 18.1. We decline to award attorney fees.